UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ASHOK ARORA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 15-cv-6109 |
| v. | ) |
| | ) Judge Marvin E. Aspen |
| MIDLAND CREDIT MANAGEMENT, | ) |
| INC. and MIDLAND FUNDING LLC, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

MARVIN E. ASPEN, District Judge:

On January 10, 2023, we granted Defendants' motion for summary judgment in part and denied it in part. (Memorandum Opinion and Order ("Summ. J. Op.") (Dkt. No. 112).) Plaintiff Ashok Arora, proceeding *pro se*, now moves for reconsideration of our grant of summary judgment. (Plaintiff's Motion for Reconsideration ("Mot. for Recons.") (Dkt. No. 113).) For the reasons that follow, we deny Arora's motion.

**BACKGROUND**

Defendant Midland Credit Management Inc. ("Midland") is a financial services company that collects debts purchased by its affiliate, Defendant Midland Funding LLC ("Funding"). (Summ. J. Op. at 6.) Years ago, Funding purchased a debt that was originally incurred by an individual named Elizabeth Adams. (*Id.*) In an apparent attempt to contact Adams regarding this debt, Midland used an automated "predictive dialing" service known as the "Noble System" to contact Arora (who is unrelated to Adams) 240 times between December 2013 and July 2014. (*Id.* at 7.) In July 2015, Arora filed a one-count complaint, alleging that Defendants' actions violated the Telephone Consumer Protection Act ("TCPA"). (Complaint (Dkt. No. 1).) The case

was transferred to a multidistrict litigation of TCPA suits against Midland in another federal district for consolidation of discovery and pre-trial issues. (Report and Recommendation (Dkt. No. 39) at 7 (citing Dkt. No. 10)).) After the case returned to this Court, Arora obtained leave to file a First Amended Complaint alleging six counts against both Midland and Funding: two counts under the TCPA, three counts under the Federal Debt Collection Practices Act ("FDCPA"), and one count of common law intrusion upon seclusion. (*See id* at 9; First Amended Complaint (Dkt. No. 49).) The magistrate judge allowed Arora to seek additional discovery on the new claims, but explained that "there would be absolutely no extension" of the discovery deadline. (Dkt. No. 53.) Shortly after the deadline elapsed, Defendants filed their motion for summary judgment. (Dkt. No. 83.)

We considered the motion, and after determining that various pieces of evidence submitted by Arora should not be considered, we granted summary judgment for Defendants in part and denied it in part. (Summ. J. Op. at 1–6.) We held that Funding was entitled to summary judgment on all claims because it never interacted with Arora and was not a debt collector under the FDCPA. (*Id*. at 14.) We granted summary judgment in Midland's favor on the TCPA and FDCPA claims because Arora failed to raise a genuine issue of material fact with respect to whether Midland had violated these statutes. (*Id.* at 17, 19.) However, we denied Midland's motion with respect to Arora's intrusion upon seclusion claim. (*Id.* at 25.) Finally, we denied Arora's requests to reopen discovery. (*Id.* at 28.)

## LEGAL STANDARD

Under Rule 59(e), district courts may entertain motions "to alter or amend a judgment." Fed. R. Civ. P. 59(e). A court will grant a Rule 59(e) motion only to correct manifest errors of law or fact or to address newly discovered material evidence. *Divane v. Krull Elec. Co.*, 194

F.3d 845, 850 (7th Cir. 1999) (citing *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996)). "A manifest error is not demonstrated by the disappointment of the losing party. It is the wholesale disregard, application, or failure to recognize controlling precedent." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (quotation marks omitted). A Rule 59(e) motion "is not appropriately used to advance arguments or theories that could and should have been made before the district court rendered a judgment . . . or to present evidence that was available earlier." *LB Credit Corp. v. Resol. Tr.*, 49 F.3d 1263, 1267 (7th Cir. 1995) (citations omitted). "A party moving for reconsideration pursuant to Rule 59(e) bears a heavy burden of establishing that the court should reverse its prior judgment." *Scott v. Bender*, 948 F. Supp. 2d 859, 865 (N.D. Ill. 2013) (citing *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996)). "Motions to reconsider sounding under Rule 59(e) should only be granted in rare circumstances." *Id.* (citing *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990)).

## ANALYSIS

Arora cites twelve purported deficiencies with our summary judgment ruling that he terms "factual errors." (*See generally* Mot. for Recons.) The first seven relate to Arora's TCPA claims against Midland, and the remaining five relate to Arora's FDCPA claims against Midland. None of the purported errors implicate Arora's claims against Funding. (*See id.*) Arora provides little to no analysis in his motion as to how the alleged errors he identifies relate to specific elements of his claims, or how they constitute "manifest errors of law or fact" affecting our summary judgment ruling. Although he is proceeding *pro se*, Arora still must comply with the Federal Rules of Civil Procedure. *Wehrs v. Wells*, 688 F.3d 886, 891 (7th Cir. 2012).

3

Regardless, we have considered each of the errors identified by Arora and conclude that they do not provide a sufficient basis for reconsidering our summary judgment ruling.

I.   Arora's TCPA Claims

We first address Arora's contentions of error with respect to his TCPA claims. (*See* Mot. for Recons. at 1–10 (Error Nos. 1–7).) The TCPA prohibits:

> any person within the United States . . . [from] mak[ing] any call (other than a call made for emergency purposes or made with the prior express consent of the called *using any automatic telephone dialing system* . . . to any telephone number assigned to a . . . cellular telephone service . . . unless such call is made solely to collect a debt owed to or guaranteed by the United States . . . .

47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added). The TCPA defines "automated telephone dialing system" as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *Id.* § 227(a)(1). We granted summary judgment for Midland on Arora's TCPA claims based on Arora's failure to establish a genuine question of fact with respect to whether Midland used an "automated telephone dialing system." (Summ. J. Op. at 14–17.)

Arora points to seven purported errors in connection with this ruling. These errors can be roughly categorized as (1) errors regarding our purported failure to consider information and testimony that Arora submitted regarding the operation of the Noble System (Error Nos. 1–3, 5–7), and (2) errors regarding our purported failure to consider documents Arora attached to his factual submissions (Error Nos. 3–4). These errors do not warrant reconsideration.

First, we find no manifest error in our conclusion that the Noble System was not an "automatic telephone dialing system" under the TCPA. (Mot for Recons. at 1–2 (Error No. 1).) Arora's renewed attempt to characterize the Noble System as an autodialer because it does not require manual input is merely an attempt to relitigate an issue that we already decided in the

context of summary judgment. *Caisse Nationale*, 90 F.3d at 1269 (reconsideration is not appropriate when the requesting party merely "rehash[es] previously rejected arguments"). Arora cites Midland's 30(b)(6) deposition testimony to show that Midland "rarely manually inputs phone numbers into a dialer's database." (Mot. to Recons. at 2 (citing Dkt. No. 99-5 ("Midland Dep.") at 15:9–15).) But Arora did not cite this testimony in his summary judgment briefing. *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 956 (7th Cir. 2013) (a "party may not use a motion for reconsideration to introduce new evidence that could have been presented earlier"). In any event, the testimony is irrelevant because it describes "the older Davox dialer" system and not the Noble System that Midland used to call Arora. (Midland Dep. 10: 4–10 (clarifying that Midland phased out the Davox system and replaced it with the Noble System in 2008), 15:3–22 (describing the Davox system).) We therefore reject Arora's first contention of error.

Nor did we manifestly err by not considering Arora's undisclosed, speculative statements about the operation of the Noble System. (*See* Summ. J. Op. at 5–6; Mot for Recons. at 2–4, 7–10 (Error Nos. 2, 6, 7).) We declined to consider this evidence because it was raised for the first time in Arora's Sur-Reply and it constituted undisclosed expert testimony. (Summ. J. Op. at 5–6.) In his motion for reconsideration, Arora addresses only the second of these grounds. He contends for the first time that he is *not* an expert and argues, without citing any caselaw, that his opinions "should be considered lay testimony because reading and understanding the relevant sections of the Noble manual does not require software expertise." (Mot. for Recons. at 10 (Error No. 7); *see also id.* at 7 (Error No. 5) ("Plaintiff has no prior experience with [the] Noble dialer and is not an expert in dialing technologies").) Arora forfeited this argument by failing to include it in his summary judgment briefing. *Cont'l Datalabel, Inc. v. Avery Dennison Corp.*,

5

No. 09 C 5980, 2013 WL 1707945, at *1 (N.D. Ill. Apr. 19, 2013) (arguments not made in summary judgment briefing and first raised in motion for reconsideration are forfeited). In fact, Arora's argument runs contrary to his statement at summary judgment that he "is *not* a lay witness when it comes to software." (Dkt. No. 103 at 3 (emphasis added).) We therefore reject Arora's second, sixth, and seventh contentions of error, which are premised on our failure to consider Arora's descriptions of the Noble System and his related hypothesizing.

We also reject Arora's contention that we should have considered his testimony about Midland's dialing technology because Midland had an opportunity to probe his qualifications during a deposition focusing on the issue of damages. (Mot. for Recons. at 7 (Error No. 5).) Because Arora did not disclose himself as an expert, Midland did not have the opportunity to ask questions about his qualifications in the context of what is required under Federal Rule of Evidence 702. Moreover, we did not decline to consider Arora's testimony based solely on Midland's inability to probe his qualifications; we did so because Arora's failure to disclose himself as an expert deprived Midland of the chance to probe the relevance or reliability of his analysis. (Summ. J. Op. at 6.) And, as already noted, Arora did not disclose the testimony at issue until his Sur-Reply. (*Id.* at 5–6.) We therefore reject Arora's fifth contention of error.

Next, we find no manifest error in our decision to exclude two exhibits—a purported proposal regarding the Noble System and an IBM manual that supposedly describes the database underlying the Noble System—as unauthenticated hearsay. (Mot for Recons. at 4–5 (Error No. 3).) Arora asks us to take judicial notice of the proposal because it appeared on a state government website and argues that the manual falls within the residual exception to the hearsay prohibition. (*Id.* at 5.) Arora did not raise these arguments in his summary judgment briefing as he should have. *Cont'l Datalabel, Inc.*, 2013 WL 1707945, at *1. In any event, they fail on the

merits. With respect to the Noble proposal, judicial notice cannot be used to circumvent the authentication requirement and prohibition against hearsay. *See, e.g.*, *Am. Prairie Constr. Co. v. Hoich*, 560 F.3d 780, 797 (8th Cir. 2009) ("Caution must also be taken to avoid admitting evidence, through the use of judicial notice, in contravention of the relevancy, foundation, and hearsay rules."); *Jingjing Liu v. Mayorkas*, No. 20-cv-654 (CRC), 2021 WL 2115209, at *4 (D.D.C. May 25, 2021) ("Judicial notice cannot be used to circumvent the rule against hearsay"). Similarly, Arora does not identify any caselaw suggesting that the manual falls into the narrow "residual exception" to the hearsay prohibition merely because Defendants could test Arora's theories. *See, e.g.*, *Akrabawi v. Carnes Co.*, 152 F.3d 688, 697 (7th Cir. 1998) (noting that the residual exception is narrowly construed "to prevent it from becoming the exception that swallows the hearsay rule."). We reject Arora's third contention of error.

Finally, Arora asks us to reconsider our decision to exclude evidence of autodialing patents that existed in the 1970s and 1980s. (Mot. for Recons. at 5 (Error No. 4).) Here too, Arora simply rehashes arguments that he made in his summary judgment briefs. *Caisse Nationale*, 90 F.3d at 1269. As previously stated, we interpret a statute like the TCPA by referring to the language of the statute and not materials that Congress may have considered when drafting it. (Summ. J. Op. at 17.) Arora also cites portions of *Facebook Inc. v. Duguid*, 141 S. Ct. 1163 (2021) that discuss the purpose of the TCPA. (Mot. for Recons. at 6.) Because *Duguid* was decided before Defendants moved for summary judgment, Arora could have raised this argument in his opposition, but he did not. *LB Credit Corp.*, 49 F.3d at 1267 (reconsideration based on arguments that could have been raised earlier is not appropriate). Regardless, *Duguid* did not hold—as Arora suggests—that any technology that allows companies to "execute large-scale telemarketing campaigns at a fraction of the cost" falls within

7

the scope of the TCPA. (Mot. for Recons. at 6 (quoting *Duguid*, 141 S.Ct. at 1167).) Instead, the Supreme Court held that *only* systems "using a random or sequential number generator" fall within the statute's scope. *Duguid*, 141 S. Ct. at 1173. We decline to revisit our conclusion that the patents are irrelevant, and we therefore reject Arora's fourth contention of error.

In sum, none of the purported factual errors identified by Arora with respect to his TCPA claims constitute "manifest errors" that merit reconsideration. We therefore reject Arora's motion for reconsideration with respect to these claims.

**II.     Arora's FDCPA Claims**

We next address Arora's arguments that we erred in granting summary judgment for Midland on his FDCPA claims. The relevant provisions of the FDCPA "apply only to consumer debts, which the [FDCPA] defines as any obligation to pay money 'arising out of a transaction' entered into 'primarily for personal, family, or household purposes.'" *Woods v. LVNV Funding, LLC*, 27 F.4th 544, 548 (7th Cir. 2022) (quoting 15 U.S.C. § 1692(a)(5)).

We granted summary judgment for Midland because Arora failed to establish a genuine issue of material fact as to whether the debt Midland was seeking to collect was a consumer debt. In arriving at this conclusion, we declined to consider four pieces of evidence because they were inadmissible hearsay: (1) a Navy Federal Credit Union website, (2) statements regarding Elizabeth Adams' age, (3) statements regarding Adams' address, and (4) an SEC Form 10-K filed by Midland's parent company, Encore Capital Groups. (Summ. J. Op. at 2–4.)

Arora contends that our decision to exclude the foregoing evidence was erroneous. (Mot. for. Recons. at 11–13 (Errors Nos. 9–12).) But as we explained in our summary judgment opinion, "even if we considered all this evidence, it would not suffice to create a genuine issue of material fact." (Summ J. Op. at 19.) Arora offers no explanation whatsoever as to how the information contained on the Navy Federal Credit Union website, the statements concerning Ms.

8

Adams' age and address, or the information contained in Encore's 10-K constitutes evidence that the debt in question is a consumer debt. At best, this evidence establishes that the company from which Adams purchased the debt offered *some* consumer loans, and that Midland's parent company has *some* consumer debt in its portfolio. (*See* Summ. J. Op. at 19–20.) This is simply too attenuated a basis upon which to conclude that the debt Adams incurred was a consumer debt under the FDCPA. *See Burton v. Kohn Law Firm, S.C.*, 934 F.3d 572, 582 (7th Cir. 2019 ("[T]he defendants' marketing materials generally describing their debt collection services do not establish that the debt they attempted to collect *in this case* was a consumer debt."). Because considering this evidence would not have affected our summary judgment ruling, Arora's purported points of error with respect to this evidence do not warrant reconsideration. We reject Arora's ninth, tenth, eleventh, and twelfth contentions of error.

Finally, Arora asserts that because he included requests for production in his notice of deposition, our statement that "nothing in the record" suggested that he had served any discovery requests on Midland during the time that discovery was reopened was inaccurate. (Mot. for Recons. at 10 (Error No. 8) (quoting Summ. J. Op. at 12).) If our statement was inaccurate, however, it is because Arora did not bring these production requests to our attention at the summary judgment stage. Regardless, Arora is once again unable to tie this purported error to any aspect of our summary judgment decision. Arora further contends that "it was impossible" for him to subpoena Midland during discovery because Midland declined to disclose any information about the debt. (*Id.*) But Arora merely rehashes an argument that he made, and we rejected, in denying his motion to reopen discovery. (*See* Summ. J. Op. at 25–28.) We reject Arora's eighth contention of error as well.

## CONCLUSION

For the foregoing reasons, Arora's motion for reconsideration (Dkt. No. 113) is denied. In view of the parties' report that efforts at settlement have been unsuccessful and their belief that a settlement conference would not be productive (Dkt. No. 116), the parties shall prepare for trial on Count 6 against Midland Credit Management Inc. (*See* Summ. J. Op. at 20–25, 28–29 (denying summary judgment as to this count).) The parties shall comply with Local Rule 16.1's instructions regarding the final pretrial order and submit a proposed final pretrial order in the form set forth by Local Rule 16.1. *See* Form LR 16.1.4, Final Pretrial Order Form, available at https://www.ilnd.uscourts.gov/_assets/_documents/_rules/LR16%20Final%20Pretrial%20Order%20Form.pdf. The parties shall submit this proposed order by June 1, 2023. The status hearing set for May 18, 2023, is stricken and reset to June 22, 2023, at 10:30 a.m. It is so ordered.

_____
Marvin E. Aspen
United State District Judge

Dated: May 8, 2023